UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MARKOS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON CONTROLS, INC.,<br><br>Defendant. | 22 Civ. 6600 (DEH)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiffs Michael Markos, Joel Cortes, Vincent Famighetti, Tylan Green, Michael Byrne, and Desi Derado ("Plaintiffs") sue Johnson Controls, Inc. ("JCI" or "Defendant") for alleged violations of the New York Prevailing Wage Law, the New York Minimum Wage Act, and the Fair Labor Standards Act ("FLSA"). First Am. Compl. ("FAC"), ECF No. 9. Before the Court is JCI's motion for summary judgment on all claims. ECF No. 39. For the reasons stated herein, JCI's motion for summary judgment is **GRANTED** with respect to Plaintiffs' Prevailing Wage Law and FLSA claims. The Court **DISMISSES** the remaining New York Minimum Wage Act claim for lack of jurisdiction.

**BACKGROUND[1]**

This case stems from a dispute over the type of work performed by Plaintiffs while employed by JCI. Def. SOF ¶ 3; Pls. SOF ¶ 3. JCI is a company that engineers, manufactures,

---

[1] The following facts are drawn from the parties' submissions in support of and in opposition to the motion for summary judgment, including JCI's Local Rule 56.1 Statement of Material Facts ("Def. SOF"), ECF No. 41, and Plaintiffs' Response to Defendant's Local Rule 56.1 Statement ("Pls. SOF"), ECF No. 46; as well as the affidavits, deposition testimony, and other exhibits attached to the motion papers. Citations to a party's Local Rule 56.1 statement incorporate by reference the documents cited therein. The facts recounted below are undisputed except where otherwise noted. Where a party purports to dispute the opposing party's statement of material fact

commissions, and services integrated electronic security, access control, fire alarm, and life safety systems. Def. SOF ¶ 1; Pls. SOF ¶ 1. JCI is hired by the State of New York and New York City to do this work. Def. SOF ¶ 2; Pls. SOF ¶ 2. JCI has a collective bargaining agreement ("CBA") with Local 3 of the International Brotherhood of Electrical Workers ("Local 3"). Def. SOF ¶ 5; Pls. SOF ¶ 5. At all relevant times, Plaintiffs were members of Local 3. Def. SOF ¶ 4; Pls. SOF ¶ 4.

## I. Electrician Prevailing Wage Classifications

Under New York Labor Law ("NYLL") § 220, the prevailing wage rate for public works projects is set by the "fiscal officer." Def. SOF ¶ 9; Pls. SOF ¶ 9. For New York State, the fiscal officer is the Commissioner of the Department of Labor. Def. SOF ¶ 9; Pls. SOF ¶ 9. For New York City, the fiscal officer is the City's Comptroller. Def. SOF ¶ 9; Pls. SOF ¶ 9. Prevailing wages are set using union collective bargaining agreements that cover at least 30% of the laborers and mechanics who perform the work in a particular locality. Def. SOF ¶ 10; Pls. SOF ¶ 10.[2] These wages are published by the New York Department of Labor ("NYDOL") and the New York City Comptroller's Office ("Comptroller's Office"). Def. SOF ¶ 11; Pls. SOF ¶ 11.

The classifications and wage rates for electricians set by the NYDOL and the Comptroller's Office are based on the collective bargaining agreement ("CBA") of Local 3. Def. SOF ¶¶ 13-14; Pls. SOF ¶¶ 13-14. JCI paid Plaintiffs according to the "H" wage rate of the CBA for their work,

---

but does not cite to admissible evidence controverting the statement, the Court will treat the statement as undisputed. *See* Loc. Civ. R. 56.1(d).

[2] Defendant contends that the law provides that job "classifications" are also set using union collective bargaining agreements. Def. SOF ¶ 10. Plaintiffs, however, note that the law does not mention "classifications." Pls. SOF ¶ 10. Upon review of the statute, the Court concludes that the law does not specify that job classifications are determined by union collective bargaining agreements. NYLL § 220(5)(a).

which—according to JCI—is consistent with the "Electrician – Service Technician" (for work performed for New York State) and "Electrician – Alarm Technician" (for work performed for New York City) classifications.  Def. SOF ¶¶ 7, 15-16, 24.[3]  The tasks of an "Electrician – Service Technician" include "[m]aintenance, repair and/or replacement of defective (or damaged) equipment on, but not limited to, Burglar - Fire - Security - CCTV - Card Access - Life Safety Systems and associated devices."  Mot. Summ. J., Ex. A, ECF No. 39-2, at 10.  The tasks of an "Electrician – Alarm Technician" include the inspection, testing, repair, and replacement of "defective, malfunctioning, or broken devices, components and controls of Fire, Burglar and Security Systems."  Mot. Summ. J., Ex. B, ECF No. 39-3, at 26.

## II.    Work Performed

According to Defendant, "JCI is not an electrical contractor and does not install the fire alarm or security systems it installs; JCI hires third-party contractors who are licensed Electricians to install the systems, including all wires and devices."  Def. SOF ¶ 17.  These third-party contractors "mechanically install[] . . . new system components," which can sometimes take many months.  *Id.* at 18.  These tasks include "pulling thousands of feet of low-voltage wiring . . . , fabricating and installing hundreds of feet of metallic and non-metallic conduit to house . . . system wiring . . . and mounting and hardwiring the JCI control panel and . . . accompanying system 'field' device[s]" such as "strobe lights, pull stations, heat detectors, and smoke detectors."  *Id.* Additionally, "[t]he licensed electrical contractor is the one that makes the field connections."  *Id.* These contractors must complete the installation in accordance with code requirements, the

---

[3] Plaintiffs appear to object to Defendant's contention the prevailing wage rates for "Electrician – Service Technician" and "Electrician – Alarm Technician" are based on the "H" division rate of the Local 3 CBA.  Pls. SOF ¶¶ 15-16.  Plaintiffs contend that "JCI paid Plaintiffs according to the applicable CBA."  *Id.*

Engineer of Record's design, and JCI's design specifications. *Id.* They are licensed Journeymen in the "A" division of a different union—the International Brotherhood of Electrical Engineers ("IBEE"). *Id.* at ¶ 19.

Defendant states that after the contracted electricians install the system, "JCI Technicians are ultimately responsible for inspecting the . . . alarm system to ensure that their programming modifications have taken hold." *Id.* at ¶ 23. "They run a comprehensive set of inspections and audio and visual tests at the control panel and throughout the . . . building complex to verify and validate that every field device functions properly and reports back to the control panel as designed." *Id.*

Plaintiffs testified or declared under penalty of perjury that at all relevant times[4] they performed various tasks related to the maintenance and repair of fire alarm systems, camera systems, antennae, security systems, and people counting systems. *See*, *e.g.*, Def.'s Mem. Law Supp. Mot. Summ. J. ("Def.'s Supp."), ECF No. 40, at 5-6 (Plaintiff Byrne programmed, troubleshot, tested, and commissioned fire alarm systems); *id.* at 8-9 (Plaintiff Cortes removed, replaced, repaired, and maintained damaged cameras); *id.* at 10-11 (Plaintiff Famighetti serviced, replaced, cleaned, and reinstalled broken antennas); Green Dep., ECF No. 45-1, at 10:3-4, 23:17-24 (Plaintiff Green degreased, cleaned, and tested barriers); Derado Decl., ECF No. 45-7, ¶¶ 6-7 (Plaintiff Derado upgraded card readers and installed people counting devices).

---

[4] Plaintiff Derado declared that he worked on a project at the Bronx County Courthouse, but any claims arising from this work are time barred. Plaintiffs bring the prevailing wage claim under a third-party beneficiary theory, *see* Pls.' Mem. Law Opp'n Mot. Summ. J. ("Pls. Opp'n"), ECF No. 44, at 11, which has a six-year statute of limitations, *Walton v. Comfort Sys. USA (Syracuse), Inc.*, 155 F.4th 144, 161 (2d Cir. 2025) (citing N.Y. C.P.L.R. § 213(2)). Derado performed work at the Bronx County Courthouse in 2016, Derado Decl., ECF No. 45-7, ¶ 3, but did not join the lawsuit until 2023, *compare* Compl., ECF No. 1, *with* FAC.

At times, Plaintiff's work involved fixes, including replacing wire lines and cables, *e.g.*, Cortes Dep., ECF No. 39-11, at 15:6-8, 20:8-10; ripping out old cabling and running new cables, *e.g.*, Derado Decl. ¶¶ 4-5; replacing patch panels, servers, and switches, *e.g.*, *id.*; pulling fiber through cable trays, *e.g.*, Famighetti Dep., ECF No. 39-13, at 26:20-27:11; running wiring into data racks, *e.g.*, Famighetti Dep., ECF No. 45-6, at 24:11-13; and tracing down wires, *e.g.*, Markos Dep., ECF No. 45-3, at 50:8-23; 62:4-18.

Plaintiffs also sometimes worked alongside contracted electricians on new installations, helping them to, *inter alia*, "fish" and run new wire. *See, e.g.*, Green Dep., ECF No. 45-1, at 16:11-17:19, 18:20-19:3, 25:10-26:15; *see also* Cortes Dep., ECF No. 39-11, at 21:18-22:2, 40:12-17; Markos Dep., ECF No. 39-15, at 25:11-26:11, 47:11-23. Additionally, Plaintiffs were, at times, tasked with fixing the work of contracted electricians. *E.g.*, Derado Decl. ¶ 6; *see also* Famighetti Dep., ECF No. 45-6, at 18:19-19:19. On at least one project, Plaintiff Markos testified that—after working alongside the contracted electricians for a period of time—the contractors were dismissed and JCI technicians took over their duties. Markos Dep., ECF No. 45-3, at 14:23-15:13, 19:17-20:7, 27:17-23, 34:5-24, 49:15-50:1; Markos Dep., ECF No. 39-15, at 33:15-25.

## III.    Timekeeping

For the most part, JCI used an app—which Plaintiffs had on their phones—to track the hours and type of work performed by its technicians. Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), ECF No. 47, at 8; *see also* Green Dep., ECF No. 45-1, at 27:11-22; Markos Dep., ECF No. 45-3, at 65:1-7; Byrne Dep., ECF No. 45-5, at 22:21-25. "Each day, the Plaintiffs were required to enter information identifying what projects they worked on and how many hours they

worked on each project."[5]  Def.'s Reply at 8; *see also* Byrne Dep., ECF No. 47-4, at 23:1-13, 23:25-24:14.  The app allowed Plaintiffs to enter the name of the client and the project number they were working on.  Def.'s Reply at 8.  The app also required the Plaintiffs to enter a work code describing the nature of the work they performed for each hour.  *Id.*  Plaintiffs could add supplemental notes regarding their work.  *Id.* at 8-9; *see also* Byrne Dep., ECF No. 47-4, at 25:9-23.  The data the app produced includes project name; location (by county) where the work was performed; the hourly rate paid; whether the rate was regular or overtime; supplemental wage override information; work codes for every hour of work performed; and any optional notes describing that work.  Def.'s Reply at 9; *see also*, Def.'s Reply, Ex. Q, ECF No. 47-3.

Sometimes, JCI kept track of their technician's time in a more analog manner, requiring technicians to sign in and out of the job site on a daily basis, DiSpigna Dep., ECF No. 45-2, at 33:19-24; Markos Dep., ECF No. 45-3, at 65:13-23, and to fill out a "service ticket" describing the work they performed, DiSpigna Dep. at 53:3-25.  These analog methods generally did not produce daily records of the work performed by the various technicians.  *Id.* at 59:7-11.  In addition to these timesheets and service tickets, technicians were sometimes asked to email summaries of the work performed; these emails, however, could be vague.  *Id.* at 91:7-21, 94:2-17.  Plaintiffs contend that the earliest service ticket Defendant produced is from February 20, 2020.  Rozger Decl., ECF No. 45, ¶ 3.

---

[5] Plaintiff Cortes testified that he was instructed to log some of his work on an installation project as work on a service contract, Cortes Dep.. ECF No. 45-4, at 58:2-59:9, but assuming that this is true, he appears to have disregarded such an instruction, as he in fact logged 236 hours to the installation project in question, Def.'s Reply at 9.

**LEGAL STANDARD**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);[6] *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal

---

[6] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

### DISCUSSION

JCI argues Plaintiffs cannot meet their burden with respect to their third-party beneficiary prevailing wage claim on two grounds: (1) Plaintiffs cannot demonstrate that the nature of the work performed was that of "A" rate electricians, Def.'s Supp. at 17-20; and (2) even if Plaintiffs could make that showing, they cannot establish the damages they would be owed with sufficient specificity, *id.* at 20-23.  JCI also argues that summary judgment is warranted on Plaintiffs' FLSA claim because it is contingent on their prevailing wage claim.  *Id.* at 23.  As discussed herein, JCI's motion for summary judgment as to these two claims is **GRANTED**.

### I.      Prevailing Wages Under NYLL § 220[7]

Under NYLL § 220 "laborers, workmen, or mechanics upon such public works, shall be paid not less than the prevailing rate of wages . . . ."  *Id.* at 16.  All contracts between the State (including its subdivisions and municipalities) and contractors require that the contractor pay prevailing wages to employees who work on the public works.  *Id.*  JCI does not dispute that the projects at issue in this case are "public works," nor does it dispute it is obligated to pay prevailing wages for that work.  *Id.*  JCI only disputes Plaintiffs' assertion that it did not pay the applicable prevailing wage based on the work performed.  *Id.*  The record shows that at least some, but not all, of the work performed falls outside the duties of the service and/or alarm technician job

---

[7] Plaintiffs bring this lawsuit as third-party beneficiaries of the contracts between JCI and the state and local government entities.

descriptions—namely installation work of various sorts—and that the "H" level prevailing wage rate at which Plaintiffs were paid was insufficient.

Nevertheless, this claim fails because Plaintiffs cannot meet their burden of showing the extent of their damages. *See Parris v. Schneider Elec. Mobility N.A., Inc.*, 197 A.D.3d 710, 712 (N.Y. App. Div. 2021). When only a portion of a plaintiff's work is subject to prevailing wages, a plaintiff must "quantify, in any reasonably definite manner, either the number of hours, or percentage of . . . time, [that] was spent on prevailing-wage work." *Id.* Vague testimony that such work was performed "occasion[ally]," "at various times," or "as per needed" is insufficient. *Id.* Even when the evidence supports the conclusion that prevailing wage work was performed "regular[ly]," a plaintiff must "quantif[y] or estimate[] the amount of time . . . spent each day on such tasks." *Id.* A plaintiff can circumvent these requirements "when the measure of damages is unavoidably uncertain or difficult to ascertain," but "a reasonable connection between a plaintiff's proof and a jury's determination of damages is nevertheless necessary." *J.R. Loftus, Inc. v. White*, 649 N.E.2d 1196, 1198 (N.Y. 1995); *see also A. Uliano & Son. Ltd. v. New York State Dep't of Lab.*, 949 N.Y.S.2d 84, 88  (N.Y. App. Div. 2012) ("When an employer fails to keep accurate records as required by statute, the Commissioner [of Labor] is permitted to calculate back wages due to employees by using the best available evidence and to shift the burden of negating the reasonableness of the Commissioner's calculations to the employer").

Plaintiffs allege that the measure of damages is unavoidably difficult to ascertain due to JCI's lax recordkeeping, arguing that JCI did not systematically track Plaintiffs' hours and work, and thus its records provide no details as to each day that Plaintiffs spent working on public projects. Pls.' Opp'n at 9. JCI counters that the timekeeping app allowed Plaintiffs to notate the work they performed on any particular day, and cites record evidence confirming that Plaintiffs had the app on their phones, were required to enter information identifying what projects they

9

worked on and how many hours they worked on each, as well as a code that described the nature of the work they performed for each hour.  Def.'s Reply at 8-10 (citing deposition testimony). Plaintiffs have put forth no evidence that this app was not used for the new installation projects for which they allege they were denied pay at prevailing wage rates.

JCI "produced . . . voluminous data in the form of spreadsheets that were created from the data Plaintiffs entered in the . . . app." *Id.* at 9.  Plaintiffs have proffered no evidence that these voluminous records do not cover the dates during which they claim to have worked on installation projects, nor that the app was incapable of collecting the data needed to allege their damages with a degree of specificity.  The Court thus has no reason to apply a reduced burden with respect to the damages element of Plaintiffs' claim, as there is no basis for a finding that their measure of damages is unavoidably uncertain or difficult to ascertain.  Under the facts of this case, the extent of damages should have been ascertainable; Plaintiffs' lack of proof in this regard simply reflects a failure to carry their burden on this element.

However, even if the Court were to apply such a reduced burden, the evidence that Plaintiffs have adduced is simply too vague and unspecific even to estimate the amount of time spent each day on installation projects; it therefore cannot provide a reasonable connection to a determination of damages.  For example, when asked how long he worked at a particular public works project, Plaintiff Famighetti testified, "I'd have to think.  I'm not sure.  I think like a year, maybe more.  I'm not sure."  Famighetti Dep., ECF No. 39-13, at 16:7-10.  Plaintiff Markos testified, "I do not recall the exact timing.  But we always had like a project after a project, so things going on," Markos Dep., ECF No. 39-15, at 24:2-4, and that "I really cannot distinguish from one project or another because I was basically . . . I was hired to that site, . . . I was there every day for, whether maintenance or whatever they need me to do.  So I was just there to fulfill whatever they . . . throw at me." *Id.* at 32:21-33:3.  When Plaintiff Green was asked about when

he worked on a public works project, he testified, "I don't recall the actual dates, but it was a project that was new install," Green Dep., ECF No. 45-1, at 24:7-14, and that he could not recall how long his work on that project lasted. *Id.* at 24:18-20.

This evidence provides no basis for a reasonable connection to a determination of damages. Because Plaintiffs cannot meet the burden of establishing the required damages element of their prevailing wage claim, Defendant's motion for summary judgment on Plaintiffs' prevailing wage act claim is **GRANTED**.

## II.    Fair Labor Standards Act

Plaintiffs' FLSA claim is entirely contingent on their prevailing wage claim. Plaintiffs do not dispute that their argument is that by failing to pay the correct prevailing wage rate, JCI failed to correctly calculate their overtime pay. Because JCI is entitled to summary judgment on the prevailing wage claim, summary judgment is **GRANTED** with respect to Plaintiffs' FLSA claim.

## III.    New York Minimum Wage Act

Defendant moves for summary judgment on all claims but did not raise any argument with respect to Plaintiffs' New York Minimum Wage Act claim. Nevertheless, in light of the dismissal of Plaintiff's lone federal claim, the Court declines to exercise supplemental jurisdiction over this state law claim. In considering whether it is appropriate to exercise supplemental jurisdiction, courts weigh "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). Generally, where "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

11

## CONCLUSION

For the reasons given above, Defendant's motion for summary judgment is **GRANTED** as to Plaintiffs' NYLL and FLSA claims, which are **DISMISSED**. Plaintiffs' remaining New York Minimum Wage Act claim is **DISMISSED WITHOUT PREJUDICE** to re-filing in state court. The Clerk of Court is respectfully requested to terminate this matter.


SO ORDERED.

Dated: March 2, 2026

       New York, New York

DALE E. HO
United States District Judge
